**Douglas HENDRIKS, Plaintiff and Appellant,**

v.

**John ANDERSON, Bruce Braaten, Gary Schultz, David Gard and Larry Niebuhr, in their Capacity as Members of the City Commission, City of Canton, South Dakota, Defendants and Appellees.**

No. 18432.

Supreme Court of South Dakota.

Argued Feb. 14, 1994.

Decided Oct. 5, 1994.

David C. Kroon of Woods, Fuller, Shultz & Smith P.C., Sioux Falls, for plaintiff and appellant.

Larry A. Nelson of Frieberg, Rudolph and Peterson, Canton, for defendants and appellees.

ANDERSON, Circuit Judge.

Appellant, Doug Hendriks (Hendriks), sought a liquor license from the Canton City Commission (Commission). The Commission refused his request and Hendriks then petitioned the circuit court for a writ of mandamus to compel the Commission to issue the license to him. Following a trial on the merits of Hendriks' petition the trial court entered an order denying Hendriks' petition. Hendriks appeals. We affirm the trial court.

## STATEMENT OF FACTS

After a fire in 1992 destroyed eight businesses in Canton, South Dakota, the Commission held public hearings to review applications for liquor and malt beverage licenses from several proposed businesses.

On February 12, 1993, Hendriks submitted an application for a retail malt beverage license to the Commission for a location on Main Street, to be known as the Canton Cafe. The Commission scheduled a hearing on Hendriks' application for March 8, 1993. During the interim, another applicant, Popischil & Dowdy, Inc. (Popischil), applied for an on/off sale beverage license transfer for another business known as the Wee Kitchen, a restaurant which had been previously operated at Hendriks' location.

Between October 1992 and February 1993, the Commission held public hearings for a number of applications for liquor licenses including a business to be located on the east end of the main street in Canton. At the hearings the Commission heard a variety of concerns from merchants about the lack of parking during proposed reconstruction of the street. Additionally, various citizens expressed concerns regarding an increase in alcohol and video lottery-related establishments in Canton. The Commission denied some applications, but approved a license for a business to be located at the east end of Main Street directly north of a city parking lot.

The Commission held a public hearing on Hendriks' application on March 8, 1993. At that hearing, Hendriks informed the Commission that he intended to open a business which would serve barbecue and Mexican food which would be heated in a microwave oven. Hendriks presented incomplete plans to the Commission at the March 8, 1993 hearing. He could not tell the Commission what the seating capacity of his business would be. He presented no remodeling

plans. Hendriks disclosed to the Commission that he would not open the cafe without the Commission's grant of a malt liquor license. He also explained that he intended to use video lottery as a marketing enticement for the business.

A number of citizens appeared at Hendriks' hearing and expressed concern regarding alcohol, video lottery, and parking in the area of Main Street Canton. At the conclusion of the hearing, the Commission denied Hendriks' application for a malt beverage license. The motion which passed unanimously cited location as the reason for denying the application.

Later at a hearing held on March 22, 1993, the Commission granted the application for the transfer of an existing malt beverage license to Popischil. Popischil intended to locate the business three to four doors east of Hendriks' proposed business place, with access to additional parking in a lot around the corner to the east of the business. No one appeared in opposition to the issuance of a malt beverage license to Popischil.

### DECISION

■ In South Dakota, no statute or municipal ordinance establishes the legal right to the issuance of a liquor license. The grant of authority from the state to local governing boards for issuing alcoholic beverage licenses is set forth in SDCL 35–2–1.2.[1] Thus, the issuance of a liquor license by a local governing body is a discretionary act. SDCL 35–2–1.2.

■ The initial question is whether a writ of mandamus is an appropriate remedy to compel an act, such as issuance of a liquor license, when such act is discretionary not ministerial. South Dakota law provides for the issuance of a writ of mandamus to compel ministerial acts "which the law specifically enjoins as a duty resulting from an office, trust or station."[2] However, a writ of mandamus is also appropriate when the action of the official entity, such as a city commission, "has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act[.]" *Crowley v. Spearfish Ind. School Dist.*, 445 N.W.2d 308, 311 (S.D. 1989) (quoting *State v. Richards*, 61 S.D. 28, 38–39, 245 N.W. 901, 905 (S.D.1932)); *see also S.D. Trucking Ass'n v. S.D. Dep't of Transp.*, 305 N.W.2d 682, 684 (S.D.1981).

■ It is alleged by Hendriks that the Commission acted arbitrarily and capriciously when it denied his application, but later granted the application of Popischil. In *Randall's–Yankton, Inc. v. Ranney*, 81 S.D. 283, 134 N.W.2d 297, 299–300 (1965) this Court commented,

> [T]hat a municipal board, in determining the question of "suitable location" for the sale of nonintoxicating beer, is not limited to statutory restrictions as to the eligibility of licensees, but that in the exercise of a legal discretion it was intended that they could consider other factors or matters as to whether such location is a proper place. It appears to us that among the factors that may be considered in the exercise of a legal discretion would be the type of business which applicant proposes to operate; the manner in which the business is operated; the extent to which minors frequent or are employed in such place of business;

SDCL 35–2–1.2 *(emphasis added)*.

1. The law provides,

   All applications for retail licenses except those set forth in § 35–2–1.1 shall be submitted to the governing board of the municipality within which the applicant intends to operate, or if outside the corporate limits of a municipality, to the board of county commissioners of the county in which the applicant seeks to operate. The application shall be accompanied by the required fee. *The governing board shall have discretion* to approve or disapprove the application depending on whether it deems the applicant a suitable person to hold such license and whether it considers the proposed location suitable.

2. South Dakota law provides:

   The writ of mandamus may be used by the Supreme and circuit Courts, to any inferior tribunal, corporation, board, or person, to compel the performance of any act which the law specifically enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.
   SDCL 21–29–1.

the adequacy of the police facilities to properly police the proposed location; as well as other factors which are inherently associated in the sale of alcoholic beverages.

In considering the above factors which may have a bearing upon whether the location is suitable, the legislature undoubtedly had in mind the fact that local governing boards, being familiar with their own communities, and in many instances having personal knowledge of facts which would not be available to the licensing authority solely on the basis of the application submitted, are in a better position to determine whether the place where the applicant proposes to operate is a proper and suitable location.

This legislative intent is further shown by the fact that municipal boards are required to hold a public hearing when such applications are to be considered, at which hearing any person interested in the approval or rejection of such application may appear and be heard. If the governing body were limited to statutory restrictions, then such a public hearing would be meaningless.

The analysis in *Randall's* appears to be applicable to the facts of this case which involves the issuance of a malt beverage license.

The parties presented to the trial court a partial transcript of Hendriks' hearing on his application as well as other facts concerning the issuance of other liquor licenses. The transcript of the hearing reveals that Hendriks failed to describe the seating capacity of the proposed business. He also failed to provide the Commission with remodeling plans of the business. Citizens expressed concerns that the location of Hendriks' proposed business lacked sufficient parking and that proposed road expansion would create a shortage of diagonal parking in the business district.

A short time after denying Hendriks' application, the Commission granted a malt beverage license to Popischil whose business was to be located within the same block, but east of Hendriks' proposed business location. A review of the record shows differences between Hendriks' proposal and Popischil's.

For example, additional parking in closer proximity to the business was available to Popischil. At the public hearing held on its application, Popischil provided the Commission with information about the type and manner of business he would be operating.

Additionally, the trial court found that no one appeared at the public hearing in opposition to the issuance of the license to Popischil on the grounds that it was an unsuitable location. The trial court received into evidence a map of a portion of the business district of the City of Canton which showed the location of the proposed businesses applying for liquor licenses, as well as holders of existing liquor licenses. The map identified the proposed Popischil location closer to off street parking than did Hendriks' proposed location.

Prior to its decision on Hendriks' application, the Commission considered factors relevant to the suitability of location similar to those suggested in Randall's. As already noted above, the presentations of Hendriks and Popischil differed. The record does not reveal any evidence that the Commission acted with personal, selfish, or fraudulent motives or upon false information. Therefore, the trial court found that the Commission did not act arbitrarily or capriciously and did not abuse its discretion.

■ The Supreme Court's function in reviewing matters which rest in the discretion of the trial court is to protect litigants from unreasonable conclusions. *F.M. Slagle & Co. v. Bushnell,* 70 S.D. 250, 255, 16 N.W.2d 914, 916 (S.D.1944). This rule has been reiterated frequently by this Court. *See, Matter of Guardianship of Jacobsen,* 482 N.W.2d 634, 637 (S.D.1992); *Rykhus v. Rykhus,* 319 N.W.2d 167, 170 (S.D.1982); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D. 1981); *Davis v. Kressly,* 78 S.D. 637, 107 N.W.2d 5 (S.D.1961). The granting of a writ of mandamus is not a matter of absolute right, but is vested in the sound discretion of the court. *Anderson v. City of Sioux Falls,* 384 N.W.2d 666, 668 (S.D.1986). The test when reviewing matters involving judicial discretion is "whether we believe a judicial mind, in view of the law and the circum-

stances, could reasonably have reached the conclusion." *Dacy v. Gors*, 471 N.W.2d 576 (S.D.1991), (citing *Myron v. Coil*, 82 S.D. 180, 143 N.W.2d 738, 740 (1966)).

In reviewing a decision of a circuit court "[t]he question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed." *Yadco, Inc. v. Yankton Cnty.*, 89 S.D. 651, 237 N.W.2d 665, 670 (1975) (citation omitted). The Supreme Court's proper scope of review of a trial court's decision in a trial de novo is the clearly erroneous test. *Id.* (citing *Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970)). A careful review of the record reveals there is evidence to support the trial court's findings of fact and conclusions of law. The judgment of the trial court denying Hendriks' application for a writ of mandamus is not clearly erroneous. Therefore, the decision of the trial court is affirmed.

MILLER, C.J., and SABERS, J., concur.

WUEST, J., and HENDERSON, Retired Justice, concur in result.

ANDERSON, Circuit Judge, for AMUNDSON, J., disqualified.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted, did not participate.

HENDERSON, Justice (concurring in result).

By want of an accurate standard of review in the closing paragraph of the majority writing, I could outright concur in this opinion. After spiritually following the proper review, the waters are muddied by faulty language of the majority.

It is well settled law that to reverse the trial *de novo* herein, this Court must be definitely and firmly convinced that a mistake has been made. *In re Proceedings for Deposit in Court*, 417 N.W.2d 187 (S.D.1987); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). The standard of review for findings of fact is clearly erroneous as opposed to mistake of law. *In re Beaver Lake*, 466 N.W.2d 163 (S.D.1991); *Permann v. Dept. of Labor*, 411 N.W.2d 113 (S.D.1987). Conclusions of law, however, are fully reviewable. *Cox v. Sioux Falls Sch. Dist.*, 514 N.W.2d 868 (S.D.1994); *Permann*, 411 N.W.2d at 117. These standards are not interchangeable.

This Court's holding today states, "The judgment of the trial court denying Hendrik's application for a writ of mandamus is not clearly erroneous." Certainly, the trial court's *factual findings are not clearly erroneous*. Nevertheless, we cannot affirm the legal questions on this standard. To be consistent and uphold precedent, we must also be definitely and firmly convinced that the trial court's conclusions were not mistakes of law. *Kayser v. South Dakota State Elec. Comm'n*, 512 N.W.2d 746 (S.D.1994); *Finck v. Northwest Sch. Dist.*, 417 N.W.2d 875 (S.D.1988). I so hold.