Curtis William **JOPLING**, Plaintiff and Appellant,

v.

Annette Ione **JOPLING**, Defendant and Appellee.

Nos. 18682, 18692.

Supreme Court of South Dakota.

Considered on Briefs on Nov. 30, 1994.

Decided Jan. 18, 1995.

Alice L. Rokahr of Doyle and Kennedy, Yankton, for plaintiff and appellant.

David Alan Palmer, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Husband appeals from trial court's judgment vacating divorce decree and from new decree. We affirm.

## FACTS

Curt and Annette Jopling were married September 28, 1973, when he was 19 years old and she was 17 years old. Annette has a part-time cake business in Vermillion, S.D., and is enrolled in the Nursing program at the University of South Dakota. Curt is the plant foreman for Sioux Tools in Vermillion. The couple has three children; one adult daughter and two minor sons.

In May of 1991, Curt initiated a divorce action, retaining legal counsel. Annette admitted service on May 23, 1991. She did not retain counsel, relying instead on her sister for advice. The parties negotiated a Stipulation and Agreement (agreement), and presented it to Circuit Judge Bogue on July 22, 1991. The agreement dealt with the division of property, waiver of alimony by Annette, and custody of the two boys. The divorce decree incorporating the agreement was filed on July 22, 1991, the sixtieth day from the day service was admitted.

The parties had problems with the custody arrangement and with the division of personal property. Curt filed a motion seeking

custody. He retained different counsel because of Annette's allegations that the agreement was procured through fraud and mistake. The parties stipulated that the 1991 decree was entered on the sixtieth day. Annette filed a motion to vacate the decree based on fraud and misrepresentation. She later amended her motion to include an allegation that the 1991 decree was void due to lack of subject matter jurisdiction. Judge Bogue recused himself and Judge Caldwell was appointed. On August 16, 1993, the trial court vacated the 1991 decree and held a court trial on September 1 and 2, 1993. The court ordered Curt to pay Annette alimony of $300 per month for three years and $1,767, which equals one-half of his pension. The court also ordered Curt to pay for medical expenses incurred by Annette after July, 1991, until a COBRA notice could be sent to her.[1] Curt appeals.

### 1. Whether the 1991 decree was properly vacated?

The court vacated the 1991 decree because it was entered on the sixtieth day following service of the summons and complaint for divorce. The parties stipulated to this fact. Therefore, we review this as a question of law. SDCL 25-4-34 provides in part:

> An action for divorce or separate maintenance shall not be heard, tried, or determined by the court *until at least sixty days have elapsed* from the completed service of the plaintiff's summons and complaint therein.

· · · · ·

*Id.* (emphasis added).

■ Until the sixty-first day after service of the summons and complaint, the trial court

lacks subject matter jurisdiction. *Zwanziger v. Zwanziger*, 286 N.W.2d 123, 124 (S.D.1979) (husband granted divorce sixty days after wife was served; since the trial court lacked jurisdiction, the decree is void).

■ Curt claims this requirement does not apply to divorces based on irreconcilable differences. SDCL 25-4-17.1. He argues the "cooling off period" under SDCL 25-4-34 should not apply because the parties must consent first under SDCL 25-4-17.1. He claims the "parties' consent is already indicative that both want the divorce[;]" therefore, the cooling off period is not necessary. We disagree. Curt also claims that SDCL 25-4-17.2[2] permits a decree to be entered before the sixty-day period. However, SDCL 25-4-17.2 merely provides a thirty-day continuance "from ... the hearing." It does not alter when an action for divorce may first be heard, tried or determined. SDCL 25-4-17.2 and 25-4-34. In fact, the 1980 Legislature validated prior divorce decrees granted on the sixtieth day in SDCL 25-4-34.1. If the legislature had desired, it could have provided further exceptions. No legislative intent to do so is shown. SDCL 25-4-34 and 25-4-34.1.

■ Curt claims that under SDCL 15-6-60(b), Annette's attack on the decree almost two years after it was entered was not within a reasonable time. A motion to vacate a "void" judgment under SDCL 15-6-60(b)(4) is not subject to the reasonableness requirement of SDCL 15-6-60(b)(1) through (3). *Kromer v. Sullivan*, 88 S.D. 567, 570,

**1.** COBRA stands for the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 et. seq., which provides that insurers must provide equal coverage for all similarly situated beneficiaries unless a "qualifying event" occurs. 29 U.S.C. § 1162(1). One such event is divorce. 29 U.S.C. § 1163(3). Curt claims that the notice was sent after May of 1991 and that Annette merely refused to continue paying for the coverage. The trial court ordered a new notice be sent because the 1991 divorce was void and therefore, the qualifying event had not occurred. *See* 29 U.S.C. § 1166(4)(A).

**2.** SDCL 25-4-17.2 provides, in part:

> If *from the evidence at the hearing,* the court finds that there are irreconcilable differences, which have caused the irremediable breakdown of the marriage, it shall order the dissolution of the marriage or a legal separation. If it appears that there is a reasonable possibility of reconciliation, the court *shall continue the proceeding for a period not to exceed thirty days.* ... At any time after the termination of the thirty-day period, either party may move for *the dissolution of the marriage or a legal separation,* and the court may enter its judgment decreeing the dissolution or separation.

· · ·

*Id.* (emphasis added).

225 N.W.2d 591, 592 (1975). The vacation of the 1991 decree was not error.

## 2. Whether the 1991 Agreement is binding as to property and alimony?

In the alternative, Curt claims that the agreement is final as to property division and waiver of alimony even if not on marital status; therefore, Annette should be estopped from litigating those issues. The agreement was incorporated into a decree entered by a court without subject matter jurisdiction. *Zwanziger*, 286 N.W.2d at 124. Estoppel occurs when "[o]ne who enters into a stipulation or agreement for judgment ... may not later challenge the judgment or take a position inconsistent with [an] earlier position." *Warren Supply v. Duerr, Pliley, Thorsheim Development*, 355 N.W.2d 838, 840 (S.D.1984). One of the exceptions to the doctrine of estoppel is where the court lacked jurisdiction to enter the stipulated judgment. *Darby v. Darby*, 370 N.W.2d 205, 208 (S.D. 1985) (Wollman, J., concurring specially) (citation omitted). Since the agreement was part of a void 1991 decree, Annette is not estopped from relitigating the issues addressed in the agreement.[3] *See Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D.1993) (agreements to modify child support not approved by the trial court are not enforced); *Rogers v. Rogers*, 351 N.W.2d 129, 132 (S.D.1984) (citation omitted) (trial court may reopen issue of alimony after divorce decree vacated); *Radigan v. Radigan*, 465 N.W.2d 483, 484 (S.D.1991) (agreement between parties on property, alimony and child support is one relevant factor for court's consideration, but it does not control the court's exercise of its discretion in light of all relevant factors).

## 3. Whether the trial court committed procedural errors?

Curt claims several procedural errors require reversal.[4] He claims that he was denied the opportunity to effectively cross examine Annette and some of her witnesses. We will not disturb the trial court's ruling on the extent of cross examination absent an abuse of discretion. *State v. Strong*, 90 S.D. 652, 660, 245 N.W.2d 277, 282 (1976) (citation omitted).

Curt claims that he was not allowed to cross examine witnesses or offer any rebuttal evidence on the issues of alimony waiver and health insurance coverage for Annette. In *Plank v. Heirigs*, 83 S.D. 173, 179, 156 N.W.2d 193, 197 (1968), we stated:

> The extent to which a witness may be cross-examined as to *facts which are otherwise immaterial* for the purpose of testing his reliability ... is ordinarily within the discretion of the trial court and much latitude is to be allowed in this line, and unless an abuse of discretion is clearly shown either in allowing or restricting such cross-examination, this court will not interfere with the ruling of the court below.

*Id.* (citations omitted) (emphasis added).

Factual circumstances surrounding the validity of the waiver of alimony were immate-versed. *Hyde v. Hyde*, 78 S.D. 176, 99 N.W.2d 788 (1959). Curt has failed to show any abuse of discretion.

He also claims that Annette failed to notify him of all the witnesses she called at trial. The parties agreed to produce witness lists ten days before hearing. Annette claims one witness, Lawrence Williams, was called to rebut testimony by Curt. Another witness, Joanne Mehlhaff, was made known to counsel during the evening of September 1. Counsel claims to have contacted counsel for Curt the next morning. The trial court stated that it would allow the testimony but that additional time would be granted to Curt to prepare for cross examination. Curt did not request a recess or any additional time. No error has been shown.

---

3. In examining the nature of such agreements, we have stated:
   > obligations credited under settlement agreements that become decreed property dispositions are not based on contracts or agreements between the parties; but rather, they are obligations ordered by the court.

   *Johansen v. Johansen*, 365 N.W.2d 859, 862 (S.D. 1985).
   Because the trial court lacked jurisdiction, the agreement entered in contemplation of the 1991 divorce decree is not enforceable. *Darby*, 370 N.W.2d at 208 (Wollman, J., concurring specially).

4. Curt claims the court erred in scheduling two instead of three days for the trial. The trial court is empowered to maintain its own calendar. SDCL 15–5–1. Only when an abuse of discretion is shown is a court's scheduling decision re-

rial since the agreement was not binding. *Darby*, 370 N.W.2d at 208. Since the qualifying event, divorce, did not occur, Annette was still covered under Curt's health insurance and was entitled to a COBRA notice. 29 U.S.C. § 1166(a)(4)(A). Curt was allowed to cross examine Annette about the alimony waiver and receipt of a 1991 COBRA notice for credibility purposes. It was within the trial court's discretion to determine the extent of this cross examination and the admission of any rebuttal evidence. *See Plank*, 83 S.D. at 179, 156 N.W.2d at 197. Curt claims that he was not allowed any rebuttal witnesses on the issues of alimony and health insurance, including Annette's medical costs from 1991 to 1993.

During cross examination of Annette, the trial court told Curt's counsel she had three minutes to "wrap it up." Counsel interpreted this to mean three minutes for the entire case. Curt then rested his case after cross examination of Annette, and made no request for additional time. After trial, Curt made a motion for a new trial to introduce rebuttal witnesses concerning Annette's testimony, other witnesses' testimony, and health insurance. The trial court told the parties in advance that two days would be allowed for trial. The trial court found that Curt took one day and part of Annette's day to present his case. The trial court denied the motion. The denial of a motion for a new trial will not be overturned absent a showing of abuse of discretion. *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D.1985). Curt has failed to show abuse of discretion. *Id.*

Curt also claims that the trial court should have allowed the minor boys to testify at trial. The boys were 12 and 10 at that time. The trial court entered a restraining order prohibiting either party from involving the minor children in the divorce proceedings. The trial court's order prohibits the parties from communicating with the children about the custody proceedings or attempting to involve them in any manner and states "these children are too tender an age for the Court to interview at this time." Dr. Arbes, a licensed psychologist, testified that the boys should not be involved in any

discussions about problems between the parents. Determination of the competency of a witness is within the discretion of the trial court. *State v. Phipps*, 318 N.W.2d 128, 131 (S.D.1982); SDCL 19-14-1. The trial court is given broad discretion in exercising its jurisdiction for the best interests of the children before and after judgment. SDCL 25-4-45. The boys' ages and the expert testimony support the trial court's order that they were too young to testify about such matters. No abuse of discretion has been shown.

### 4. Whether the support payments were improperly calculated?

Curt claims that his child support obligation was improperly determined because of the manner his alimony payment was deducted from his gross income. He proposes a new calculation making his child support obligation $28 less per month. In reviewing child support awards, we determine whether the trial court abused its discretion. *Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D.1991).

Curt has not shown where the trial court erred. He merely proposes a new calculation without any explanation. Annette claims that Curt is deducting the alimony from his gross income, then placing it back into gross income to determine deductions for tax liabilities, thereby reducing his net income, which in turn reduces his child support obligation. No justification for doing so is presented by Curt. He also claims that the alimony should be included in Annette's income. Annette's actual income is $125.16 per month. Her monthly wages were determined according to minimum wage. SDCL 25-7-6.4. Even if the alimony payment were included in her income, it would not amount to the minimum wage imputed by the trial court of $736. He has failed to show any abuse of discretion.

Curt claims that the child support payments were impermissibly modified retroactively beyond the date allowed. In *Gunn v. Gunn*, 505 N.W.2d 772, 775 (S.D.1993), we interpreted SDCL 25-7-7.3 to allow modification of past due payments only from the

date of filing a petition for modification. Annette's motion to modify support was served on January 20, 1993. The trial court awarded arrearages from January 22, 1993 to August 31, 1993. No abuse of discretion has been shown.

### 5. Whether the custody award was in the best interests of the children?

■ Curt claims that the award of custody to Annette was not in the best interests of the children. "The trial court has broad discretion in awarding custody and will be reversed only if there is a clear showing of an abuse of discretion." *Friendshuh v. Headlough*, 504 N.W.2d 104, 105–06 (S.D. 1993) (citations omitted). "Child custody is to be decided based on what is in the best interests of the child with respect to its temporal, mental and moral welfare." *Id.* at 106 (citations omitted).

The trial court found that Curt displayed a violent temper around the children. The court also found his attitude towards religious education unhealthy and confusing: he wants them to make up their own minds when they are old enough yet "pays" them to go to church on occasion by threatening to withhold their allowance if they do not. He uses the children "as a tool in his fight" against Annette. His alcoholism and drug abuse led to his abusive behavior of Annette, the children, the neighbors and a family cat. Dr. Arbes recommended that primary physical custody remain with Annette. The trial court concluded that it was in the best interests of the boys that Annette have custody. Curt has failed to show this was not in the best interests of the children.

### 6. Whether Curt is entitled to a partial award of trial court attorney's fees?

■ Curt claims he should have been awarded partial attorney's fees because of Annette's delay in bringing her claim to vacate the 1991 decree. He does not ask for fees for the custody dispute. Under SDCL 15–17–38, the trial court may award attorney's fees in domestic relation cases. "[T]he trial court should consider the following [factors]: the amount and value of the property, the litigation's intricacy and importance, the

labor and time involved, the skill required to draft the pleadings and try the cause, the discovery procedures utilized, whether complicated legal problems existed, the time required to try the cause, and whether written briefs were required." *Rykhus v. Rykhus*, 319 N.W.2d 167, 171 (S.D.1982) (citing *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979)).

■ We will not disturb the trial court's award of attorney's fees absent an abuse of discretion. *Rykhus*, 319 N.W.2d at 171. Curt specifically addresses the reasonableness of the actions affecting the time spent on the case and the uniqueness of the issues. The trial court found that the issues were not unusual and that neither side was any less cooperative than the other. In examining the factors, the trial court found that each party should be responsible for their own attorney's fees and costs. No abuse of discretion has been shown.

■ Both parties have made itemized requests for appellate attorney's fees. Appellate attorney fees may be awarded under SDCL 15–17–38. In determining whether one party should be required to pay another party's attorney's fees, this court considers the property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case. *Raml v. Raml*, 499 N.W.2d 623, 626 (S.D.1993) (citation omitted). After considering these factors, we hold that Annette is entitled to $2,000 in appellate attorney's fees from Curt.

We affirm.

MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., and WUEST, Retired J., concur.